# RUSSELL v. WASHINGTON SAVINGS BANK.

EVIDENCE; AGENCY; CORPORATIONS; ATTORNEY AND CLIENT; BANKS.

1. An agent is not incompetent to testify to facts showing or tending to show his agency, but, until there has been some proof of such agency, representations and statements made by the alleged agent are not competent to be introduced in evidence.

2. While the duties of officers and agents of a corporation may be prescribed or limited by its charter or by-laws and regulations, yet, in the absence of specific limitations brought to the knowledge of those who deal with them, or of which those who deal with them are bound to take notice, the officers of a corporation, as its agents, are authorized to bind the corporation to third parties, as long as they act within the ordinary scope of their duties.

3. The president of a bank, and in his absence the vice president or other person acting in the place of the president, has, within the scope of his general authority, the right to employ counsel to represent the bank in pending or prospective litigation.

4. In an action by a firm of attorneys to recover for professional services rendered a bank, in which the defense was that the vice president, who employed the plaintiffs both for himself individually and for the bank, had no right to act for the bank, a judgment was *reversed*,

which was entered upon a verdict for the defendant directed by the court at the close of the plaintiffs' testimony, where the evidence tended to show that such vice president was one of four vice presidents of the bank, who were by the by-laws, of which the plaintiffs did not have notice, required to perform certain specified duties—not including the employment of counsel—in such order as the board of directors might indicate, in which respect the board had not acted; that the plaintiffs were employed by that vice president, whose name alone appeared in a newspaper advertisement as vice president of the bank, which advertisement was published about the time of their employment; that they were employed during the necessary absence of the president from his duties; that after their employment one of them had interviews concerning the subject-matter of the employment, at the bank, with the vice president employing them, in a private office where he was apparently transacting its business, at which interviews other officials of the bank were present; and that after the employment of the plaintiffs certain bonds which they advised should be sold at public auction were advertised so to be sold, which advertisement was only withdrawn afterwards on the order of the president. On such evidence it was for the jury, and not the court, to determine whether the employment of the plaintiffs was on behalf of the bank or for the individual interest of the officer employing them.

No. 1319.   Submitted March 15, 1904.   Decided April 5, 1904.

HEARING on an appeal by the plaintiffs from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury directed by the court in an action of assumpsit.

*Reversed.*

The COURT in the opinion stated the case as follows: ,

This is a suit at common law instituted by the appellants, William Hepburn Russell and William Beverly Winslow, as plaintiffs in the supreme court of the District of Columbia to recover compensation for professional services claimed to have been rendered by them to the appellee, the Washington Savings Bank, at its request. The suit was instituted on September 15, 1898.

The Washington Savings Bank was organized as a corporation under the laws of the State of West Virginia, and had a

banking house and office and did business in this city and District. It was organized with Mr. Joseph D. Taylor as president, four vice presidents between whom there was no distinction in rank or order, numerically or otherwise, although the name of George O. Ferguson was the first mentioned; a treasurer, C. H. Davidge; a cashier, and a board of eighteen directors, among whom were included the president, the four vice presidents, and the cashier. Advertisements appeared in some of the newspapers of its organization and business, subscribed with the names of the president, George O. Ferguson as vice president, C. H. Davidge as treasurer, and the cashier.

The by-laws of the organization, which were adopted and went into effect on December 28, 1897, but of which it is conceded that the plaintiffs had no knowledge before their production at the trial had in this case, provided, among other things, that the board of directors should have the entire management of the property and business of the bank; that they should elect from among their own number annually the president, four vice presidents, a treasurer, two auditors, and an executive committee; that the president should preside at all meetings and sign all papers required to be executed by the bank, and that in his absence these duties could be performed by the vice presidents in such order as the board of directors should indicate; and it was provided also that seven directors should constitute a quorum for business.

George O. Ferguson was a stockholder and one of the eighteen directors of the Washington Savings Bank. He was also one of the four vice presidents, and published in the advertisements that have been mentioned apparently as the only vice president. It would seem, however, that he had not paid for his stock, at least not all that was due for it. He had had some transactions with an organization in New York known as the Arkell Publishing Company, from which he had received, for some consideration that does not appear, two promissory notes, each for the sum of $5,000, secured by bonds of the Arkell Company. These notes, indorsed by himself, which indorsements he claims to have been for accommodation, he procured to be discounted by

the savings bank, and of the proceeds of the discount the sum of $3,800 went to the Arkell Company, and the residue went in part to Ferguson and in part was retained by the bank in payment for Ferguson's stock, which, however, seems not to have been paid for in full by this sum, for the bank retained the stock, and it received and held also the bonds of the Arkell Company that had been pledged as security for the payment of the notes.

About the middle of August, 1898, the Arkell Publishing Company became financially embarrassed, and its affairs went into the hands of a receiver. Ferguson, either for himself or for the bank, or for both, immediately took steps to secure the payment of the notes which he had transferred to the bank with his indorsement and the bonds that accompanied them. It seems that the bonds were of doubtful value and probably insufficient as security for the notes. Mr. Taylor, the president of the bank, was absent at the time in the White Mountains, attending to a sick child; and it would seem that his absence extended over the greater part, if not the whole, of August and part of September; and Mr. Ferguson claims to have been acting as president in his place at his special instance and request. Ferguson thereupon, on August 17, 1898, sought the plaintiffs, Russell and Winslow, partners in the practice of the law, at their office in the city of New York, and retained them to attend in their professional capacity to the claim on the notes against the Arkell Publishing Company. The plaintiffs and Ferguson allege that the retainer was on behalf of the savings bank; the bank now repudiates the agency of Ferguson and denies his right to employ counsel, and seems to claim that the employment of the plaintiffs by him was for the protection of his own interest on account of his indorsement of the notes.

From August 17, 1898, to September 10 or September 14, 1898, the plaintiffs were actively engaged in the service for which they had been retained; and one of them, Mr. Russell, came to Washington on one occasion, September 10, 1898, to confer with the officers of the bank about the matter, and did actually have such conference on that day at the private office of the

bank in this city. No question seems to be made as to the fact that they rendered efficient service; nor is there any question as to the value of their services as claimed.

Some friction or dissension appears to have been developed in the bank prior to August 27, 1898, between Ferguson and Davidge, the treasurer, in regard to this matter; and Davidge appears to have put himself in communication with Taylor, the president, in regard to it. Taylor seems to have stopped and countermanded the sale of the bonds of the Arkell Company, held by the bank, which the plaintiffs had advised. Ferguson was in New York on August 27, 1898, and wrote from there on that day to Davidge a somewhat equivocal letter, but protesting against the action of Davidge in withdrawing the bonds from sale. Davidge defended himself under an order from the president. The communication from Ferguson to Davidge of August 27 was followed up by one from the plaintiffs under date of August 31, 1898, of the same tenor and effect, and referring also to certain contemplated action in Texas, where the Arkell Company appears to have owned some real estate. This letter also refers to an appointment made by Ferguson with the plaintiffs for Taylor, the president, to confer with them at their office on the same day—an appointment which apparently was not kept. The letter was addressed to the Washington Savings Bank, Washington, D. C., and was answered by Davidge on September 1, 1898, to the effect that the letter had been received and forwarded to Taylor to receive his instructions.

Then on September 6, 1898, apparently after communication with Taylor, Davidge wrote to plaintiffs to the effect that he had been directed to refer them to Mr. Louis F. Doyle, Park Row, as the attorney of the bank, for any information which the plaintiffs might desire in reference to the matter of the Arkell Publishing Company. On the next day, however, the plaintiffs having no doubt communicated with Ferguson, who was at that time in New York, in regard to this letter from Davidge, Ferguson addressed a letter to them, in which, asserting his own authority as vice president of the bank in the absence of Taylor to retain the plaintiffs, and that he had reported their employ-

ment to other officers of the bank, who made no objection thereto, he stated that he knew nothing of the employment of any other attorney, and directed the plaintiffs to continue to act for the bank.

This was followed on September 10, 1898, by a visit of the plaintiff Russell to Washington, where he had an interview with Ferguson, Davidge, and another officer of the bank in the private office of the institution, when they discussed without any definite result the matter of the withdrawal of the Arkell Company bonds from sale under the order of Taylor, the president. Then, on September 14, 1898, the plaintiffs were notified by Louis F. Doyle that he was the only authorized attorney of the bank in the matter of the claim of the bank against the Arkell Company, and that the employment of the plaintiffs by Ferguson was without authority from the bank. The plaintiffs then ceased to act in the matter.

In the meantime, on September 7, 1898, the bank, by Louis F. Doyle, as its attorney, had instituted suit in New York against Ferguson and the Arkell Publishing Company on account of the notes and the indorsement of Ferguson thereon; and the plaintiffs, on October 17, 1898, entered their appearance for Ferguson in the suit. The plaintiffs testified that they knew nothing of the institution of this suit until after September 14, 1898, when their alleged employment by the bank had terminated.

On September 15, 1898, the plaintiffs promptly instituted in the supreme court of this District the proceedings now before us, filing with their declaration a bill of particulars setting forth professional services of the value of $895. The defense was want of authority on the part of Ferguson to bind the bank by the employment of counsel. The claim is that he had employed them on his own behalf.

At the trial the facts here stated were elicited. Of course, the controversy turned upon the question of the agency of Ferguson and his authority to act for the bank in the employment of counsel. Both the plaintiffs and Ferguson testified; the testimony of the latter, who at the time of its being taken resided in

Kansas City, in the State of Missouri, being adduced by way
of deposition. Much of the testimony offered on behalf of the
plaintiffs, and especially a large part of Ferguson's deposition,
was ruled out by the trial court. The defendant offered no testi-
mony and requested the court on the testimony adduced and ad-
mitted on behalf of the plaintiffs to direct the jury to return a
verdict for the defendant. This was accordingly done, and judg-
ment was rendered for the defendant, from which the plaintiffs,
in pursuance of exceptions reserved by them at the trial, have
appealed to this court.

*Mr. W. H. Robeson, Mr. Clayton E. Emig, Mr. C. A. Keig-
win, and Mr. William Hepburn Russell* for the appellants.

*Mr. A. A. Birney* and *Mr. H. F. Woodward,* for the appellee.

1. If Ferguson was without authority from the defendant
bank to employ counsel in its behalf, it is certain that his con-
versations with plaintiffs, his statements to them that he had
authority, and his instructions touching the business were all
immaterial, and were properly rejected. 1 Morawetz, Priv.
Corp. 540a.

2. Unless the title of vice president *ipso facto* carries with it
a right to bind the corporation in contracts, independent of the
by-laws, or in defiance of them, Mr. Ferguson could not, nor
could any of the other three vice presidents, without the prior
sanction of the board of directors, enter into any contract on its
behalf. No authority can be found for the claim that such au-
thority inheres to the office of vice president. It is common
knowledge that these officers are not under salary, and ordinarily
perform only the duties of directors. It is startling doctrine that
independent of action by the board of directors a vice president
may conclusively determine that he should take up the business
of the bank, and that his contracts should bind it. In absence of
special authority a corporate officer can bind the corporation
only by his acts done in the discharge of the ordinary duties
of his office. *United States Bank* v. *Dunn,* 6 Pet. 51; *United*

*States* v. *City Bank,* 21 How. 356; *New Haven & N. Co.* v.
*Hayden,* 107 Mass. 525; *Mahone* v. *Manchester & L. R. Corp.*
111 Mass. 72; *Hoyt* v. *Thompson,* 1 Selden, 320; *Washington
Gaslight Co.* v. *Lansden,* 172 U. S. 534–547. The authority
of corporation officers is derived from the board of directors, un-
less conferred by the charter of the corporation. And before
the corporation will be bound by the contracts of such officers it
must be shown that authority to so contract has been given by
the board of directors, either expressly, impliedly, or by ratifica-
tion. *Louisville, etc., R. Co.* v. *McVoy,* 98 Ind. 391; *United
States* v. *City Bank,* 21 How. 356. See also *Chicago & N. W.
R. Co.* v. *James,* 22 Wis. 194, a nearly analogous case; *Virginia
Lead Min. Co.* v. *Maupin,* 78 Mo. 24. Had it been shown that
the board of directors had designated Mr. Ferguson to act as
president and perform the functions of that office, there would
be ground for contention that he might employ counsel; even this
would be open to doubt. *Walworth Co. Bank* v. *Farmers' L. &
T. Co.* 14 Wis. 358.

3. As director Mr. Ferguson could not employ counsel and
bind the bank. *Monroe Mercantile Co.* v. *Arnold,* 108 Ga. 449;
*Limer* v. *Traders Co.* 44 W. Va. 175; 1 Morawetz, Priv. Corp.
p. 532; *Pixley* v. *Western P. R. Co.* 33 Cal. 183; *Farmers'
Bank* v. *McKee,* 2 Pa. St. 318; 1 Morawetz, Priv. Corp. §§
251, 252.

4. There was no ratification of the employment. There can
be no ratification unless the principal has full knowledge of the
facts. *Owings* v. *Hull,* 9 Pet. 607, 629. In this case, unless the
bank accepted the employment of plaintiffs, knowing they were
employed *in its behalf,* no act of express affirmance was at-
tempted to be shown. There is no proof that the*board of direct-
ors* was ever informed of plaintiffs' employment, or that it, or
the president, accepted the plaintiffs as the bank's attorneys. It
is immaterial that the treasurer and one of the other vice presi-
dents may have been informed; if they could not in terms have
authorized the employment they could not by passive acqui-
escence, or by acting on advice of the plaintiffs, communicated by
Ferguson, ratify such unauthorized employment. It is to be ob-

served that no proof was made or tendered to show what duties are usually performed by vice presidents of Washington banks. Neither was any proof tendered that Mr. Ferguson had ever been entrusted with duties of such nature that, from his exercise of them, the public might assume his authority to employ counsel.

The settled rule is that one who assumes to deal with a corporation through one of its members must satisfy himself, *at his peril,* that the member has authority to act as agent for the corporation, and that he is acting within the scope of his authority. 2 Morawetz, Priv. Corp. §§ 593, 606; 1 Beach, Corp. p. 330; *Rice* v. *Peninsular Club,* 52 Mich. 87; *Fifth Ward Savings Bank* v. *First Nat. Bank,* 48 N. J. L. 513; *Morris* v. *Griffith Co.* 69 Fed. 131. *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534, 547, is a direct authority for the action taken by the court, and we submit that the judgment should be affirmed.

Mr. Justice MORRIS delivered the opinion of the Court:

Undoubtedly much of the testimony sought to be introduced in this case, and which was excluded by the trial court, is objectionable by the laws of evidence and was properly excluded. Liable to this criticism is a very large part of the deposition of George O. Ferguson, whereby it was sought to prove his declarations and statements as those of the authorized agent of the bank to the plaintiffs before there was any proof of his agency. An agent is not incompetent to testify to facts showing or tending to show his own agency; but, until there has been some proof of such agency, representations and statements by the alleged agent are not competent to be introduced in evidence. 1 Greenl. Ev. §§ 184c, 416, and cases there cited; 2 Greenlf. Ev. § 63. And such is the well-acknowledged rule of law upon the subject, under which a great part of the deposition in question is inadmissible, as Ferguson was interrogated as to the representations and statements made by him to the plaintiffs before there was any proof introduced as to his agency, or any offer

thereafter to prove such agency so as to make these representations admissible.

Moreover, most of the interrogatories are subject to the just criticism that they are of a leading character, as is plainly shown by the fact that in a great many instances the answers are yes or no. For this reason, if for no other, the interrogatories are objectionable. Clearly if this deposition is to be used again, it should be recast.

But while we fully concur with the learned justice who presided in the court below at the trial of this case in most of his rulings, we find ourselves unable to concur in the view that there was no sufficient testimony to go to the jury on the question of the agency of George O. Ferguson, and his authority to bind the defendant bank in the transaction with the plaintiffs. Agency in such cases is usually proved by circumstances and by the apparent relations and conduct of the parties. A corporation can only act by agents, and its duly elected officers are within the scope of their respective duties, its agents to deal with third parties. Their duties may be prescribed or limited by the charter of the incorporation or by by-laws and regulations of the body corporate; but in the absence of specific limitations brought home to the knowledge of those who deal with them, or of which those who deal with them are bound to take notice, the officers of a corporation, as its agents, are authorized to bind the corporation to third parties so long as they act within the ordinary scope of their duties. While the board of directors or trustees, or by whatever name it may be called, is the usual governing body of all private corporations and entitled to direct and control all its business, great or small, and to give direction to its other officers, yet the president and other officers, and not the board of directors, are those who are usually brought into contact with third parties in the conduct of the business of the organization; and custom and usage, and the necessities of the social order, demand that these executive officers should be regarded as entitled to bind the organization in all matters which such organizations are accustomed to transact through such officers. This is ele-

mentary law in regard to corporations, but it seems proper to recall it in this case.

Now, that the president of a bank is its chief representative and entitled to act as its general agent in the transaction of its business cannot be questioned. That among the things to which he can undoubtedly bind his bank is the employment of counsel to appear for it and defend its interests in pending or prospective litigation, is a proposition which seems to receive the unqualified approval of counsel on both sides of this case. Indeed, the employment of Louis F. Doyle in the present instance to take charge of the litigation of the bank for the protection of its interests in the matter of the bonds and notes given by the Arkell Publishing Company would appear to have been the act exclusively of the president of the bank; and if the president of a bank, under the scope of his general authority, has the right to employ counsel to represent the bank in pending or prospective litigation, it is not apparent why the vice president, or any other officer acting for the time in the place and stead of the president, should not have the same authority in cases of emergency arising during his incumbency of the office and demanding prompt action by him. The person acting in the place of the president during the absence of the latter is to all reasonable intents and purposes the president for the time being, and there is no warrant in reason or in any adjudicated case for denying to him the right to exercise the usual and ordinary functions of the president so far as they are required for the occasion. What the president within the scope of his duty may do the vice president acting in his place may do. This is the very purpose for which vice presidents are provided to be chosen—to perform the functions of the president in the absence of the latter. In ordinary business organizations, as a general rule, the vice president has no function or duty whatever to perform other than to take the place of the president in his office.

Assuming, then, that when litigation arises in which it is expedient that a bank should be represented by counsel, the president of the bank has the authority, as such president, to employ such counsel; and assuming also, as we are of opinion that we

must assume, that the vice president of a bank, acting as president in the absence of the latter, has the same right to employ counsel in an emergency arising during his incumbency of the presidential office, do we find anything in the present case that militates against the application of this rule? Here we have a bank with four vice presidents, instead of one, without any designation, either numerically or otherwise, of their order or precedence—an arrangement, it would seem, of very unusual occurrence, and one which does not appear to have been brought to the knowledge of the plaintiffs before the 1st of September, 1898; and we have also a set of by-laws, of which the plaintiffs had no notice until long after this time, whereby, among other things, it was provided that certain specified duties, therein provided to be performed by the president, should, in his absence, be performed by the vice presidents in such order as the board of directors should indicate. These specified duties do not, either expressly or by implication, include the matter of the employment of counsel to conduct necessary litigation; but we may assume that the one of the vice presidents designated under these by-laws to perform the duties so specified would be the proper and the only person competent to transact the general business of the bank ordinarily performed by the president.

Now, it appears very clearly in evidence here that, when in the month of August, 1898, the emergency arose for the employment of counsel to represent the Washington Savings Bank in the prosecution or protection of its interests against the Arkell Publishing Company, the president of the bank was absent in New England in attendance upon a sick child, and was not performing the duties of president. It also appears that, in an advertisement of the business of the bank inserted in a Washington newspaper of the date of August 29, 1898, inserted by authority of the bank, the advertisement purports to be signed by J. D. Taylor as president, George O. Ferguson as vice president, C. H. Davidge as treasurer, and J. F. B. Goldney as cashier, thereby holding out Ferguson as the sole vice president, authorized as such to act in the absence of the president. It also appears that, during the period of the employment of his firm,

the plaintiff Russell had several interviews at the bank with Ferguson, as well as other officers of the institution, and he found him in the private office of the bank apparently in authority there and transacting its business. It appears also that when, after the employment of the plaintiffs by Ferguson, the plaintiffs advised Ferguson to have the bank sell the bonds of the Arkell Company, which it held, at public auction, and bought in by the bank, the bank thereupon caused these bonds to be advertised for sale, and only withdrew them afterwards on the order of Taylor, the president. All these are circumstances tending to show that Ferguson was acting as the president of the bank in the absence of Taylor, admitted in evidence and properly admitted for that purpose. It cannot therefore well be said that there was no testimony to show the authority and the agency of Ferguson. On the contrary, in the absence of countervailing testimony, it might well have been inferred that Ferguson was the principal executive officer in charge of the affairs of the bank during the absence of the president. The weight of it, of course, was for the jury to determine; but we think that they ought to have been allowed to consider it, as we think that, on the other side, they should be allowed to consider and determine whether the employment of the plaintiffs by Ferguson was on behalf of the bank or for his own individual interest, which, under the circumstances, was not wholly in accord with that of the bank.

We think there was error in the direction of a verdict in this case for the defendant. For that error the judgment must be reversed, with costs, and the cause must be remanded to the Supreme Court of the District with directions to vacate such judgment and to award a new trial.

*Reversed. And it is so ordered.*